Larry N. TAYLOR, Plaintiff,

v.

SCOTTPOLAR CORPORATION, a Foreign Corporation; Ken Pope; Wade Krieger,, Defendants.

No. CIV–96–1879–PHX–RCB.

United States District Court, D. Arizona.

Feb. 20, 1998.

---

Alona M. Gottfried, DeeAn Gillespie & Associates, P.C., Phoenix, AZ,, for plaintiff.

Robert L. Rediger, Laura C. McHugh, Cook, Brown, Rediger & Prager, LLP, Sacramento, CA, for defendants.

### AMENDED ORDER

BROOMFIELD, District Judge.

Before the court is Defendants' motion for summary judgment, or in the alternative partial summary judgment, against Plaintiff Larry Taylor.

Taylor's complaint alleges that he was fired in violation of Title VII, and the Arizona Civil Rights Act ("ACRA"), because he attempted to protect co-worker Susie Marion from discrimination due to her pregnancy. Furthermore, Plaintiff asserts that he is entitled to punitive damages because Defendants acted with malice. Defendants dispute that there is sufficient evidence to warrant punitive damages and have included this challenge in their motion for summary judgment.

Having considered the parties' briefs in support and in opposition to the summary judgment motion, the court now rules.

### FACTUAL BACKGROUND

Plaintiff was employed by Defendant ScottPolar as a district manager beginning August 21, 1994. Plaintiff supervised and worked closely with another manager, Defendant Wade Krieger. Plaintiff reported to Defendant Kenneth Pope. During the period that ScottPolar employed Plaintiff, another employee Susie Marion worked as a journeyman and a foreman under both Krieger and Plaintiff.

Marion discovered she was pregnant in late 1995. She publicly announced her pregnancy in January, 1996. However there is conflicting evidence that both Plaintiff and Defendants were aware of the pregnancy as early as October or November of 1995. However, Marion herself recalls the date that she learned of her pregnancy to be early November, 1995. At this time, Marion approached Plaintiff, prior to announcing her pregnancy, to ask for advice about the company's probable reaction. Taylor indicated that he did not know how the company would react. He also indicated that he would inquire about reassigning Marion to the engineering department of the company.

Plaintiff alleges that upon learning of Marion's condition, Defendants Pope and Krieger conspired to eliminate Marion from ScottPolar. Marion was assigned little work, demoted, and "treated differently" after her pregnancy. It is undisputed that ultimately she received no construction work at all. As a result, Taylor assigned Marion work in the office at the same pay rate she received for construction work, although he felt that others in the company would be upset that he had done so.

Moreover, Taylor alleges that Defendants schemed to get rid of Marion because she was pregnant. In fact, in November, 1995, Pope allegedly told Taylor, "We got to find a way to get rid of Susan Marion." [1] (Deposition of Larry Taylor, Defendant's exhibit, at

---

1. Defendants do not dispute that Pope made the statement; rather, they allege that the statement occurred before the company knew Marion was pregnant. They point to the verified complaint, which states that Marion announced her pregnancy in January. While it is true that this date is not in dispute, as Taylor does not allege that Marion announced her pregnancy before this point, Taylor does assert that Defendants knew of the pregnancy when the statement was made. The two assertions taken together do not necessarily contradict one another. It is possible that Defendants learned of the pregnancy before Marion publicly announced it. Pope testifies in his deposition that someone told him about Marion's pregnancy. (Deposition of Kenneth Pope, Plaintiff's exhibit "B", at 67:13). Thus, he did not learn of the pregnancy from Marion's announcement. In addition, Pope indicated that he may have learned of the pregnancy in November. (Pope Depo, 67:13–19). These facts, while not conclusive, when taken in the light most favorable to the Plaintiff, are enough to establish a reasonable question of fact on this issue.

152:5–11). At this point Taylor claims he was bothered by Pope's attitude; however, he did not openly disagree with Pope. Rather, he alleges that the company began to fish for damning information against her, and, through his actions, he refused to participate. It is undisputed that Pope asked Taylor to write up Marion for alleged theft and time-charging misconduct. However, Taylor refused. He claims that he refused because he did not feel the charges had any merit, and because the company was treating Marion unfairly.

Defendants, however, contend that Taylor actually took discriminatory steps toward Marion. Following Marion's demotion, Taylor elected to take away her company truck. Taylor testified that because she was no longer working as a foreman, she had no use for the truck. In addition, Taylor asserts that he talked the decision over with Pope and that Pope agreed that the action was proper. Furthermore, he claims that Pope could have returned the truck to Marion. Defendants contend that Taylor *alone* took the steps to reassign Marion's truck *solely* because she was pregnant and he did not want her to leave in the middle of a job.

After Taylor ultimately reassigned her truck, Marion called the Vice President of Operations, Dennis Smith, to complain about the loss of her truck, the fact that she was no longer assigned work, and the different treatment toward her after she announced her pregnancy. Human Resources Manager, Mr. Barnett, investigated the complaint at Smith's request, and ultimately recommended that Pope take action against Taylor. He offered three alternatives: demotion; discipline; or discharge. However, he based the decision, at least in part, on reports from Pope and Krieger. Smith and Pope ultimately decided to terminate Taylor after receiving Barnett's recommendations. Taylor's termination, however, did not end Marion's discontent.

■ Marion complained about the lack of work and ill treatment against her several times after Taylor's departure and filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Her truck was never returned following Taylor's termination. She ultimately left ScottPolar because she felt she could not work under the discriminatory conditions at the company.[2]

---

**2.** Before turning to the issue of whether a material fact question exists to preclude summary judgment, the court must deal with Defendants' objections to several of Plaintiff's offered facts. The challenged facts stem from Plaintiff's affidavit, which was produced after Plaintiff's sworn deposition testimony. Defendants argue that the affidavit contradicts the prior sworn testimony and must be disregarded. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir1991).

Defendants correctly cite the rule of *Kennedy*, applied throughout this circuit. *See, e.g., McCray v. Casual Corner, Inc.*, 812 F.Supp. 1046 (C.D.Cal.1992); *Stutz Motor Car of America, Inc. v. Reebok Inter., Ltd.*, 909 F.Supp. 1353, 1360 (C.D.Cal.1995), .aff'd, 113 F.3d 1258 (Fed.Cir. 1997). However, courts in the Ninth Circuit apply this rule with caution. *Harkins Amusement Enters., Inc. v. General Cinema Corp.*, 850 F.2d 477, 482 (9th Cir.1988); *School Dist. No.1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). The trial court must first determine that the affidavit itself is a sham, created for the purpose of creating a material issue of fact to preclude summary judgment. *Kennedy*, 952 F.2d at 267. If the court determines that this situation exists, it may disregard the affidavit because sham affidavits are insufficient to create a question of material fact. However, if the court determines that the affidavit is not a sham it may consider the evidence. *See, e.g., Harkins*, 850

F.2d at 482–83. For instance, if the court determines that the affidavit was offered merely to clarify earlier testimony, it may find that the affidavit itself is not a sham. Thus, the affidavit may serve to establish some question of fact.

In the present case, the affidavit is not entirely contradictory. Much of what the Defendants object to is an alleged contradiction between the Plaintiff's original testimony (that he could not remember what he told his superior Barnett) and his later testimony (about what he knew he did *not* tell Barnett). While the statements do create a need to investigate the affidavit as a whole, they do not clearly establish that the affidavit is a sham. Rather, the statements may reasonably be interpreted as clarification. While Plaintiff may not remember his exact conversation, he may remember small details. Examining Plaintiff's purported contradictory statements in the context of the affidavit as a whole, does not lead the court to conclude that the affidavit was a sham. However, the affidavit clearly is insufficient to establish that events truly happened as depicted in the affidavit.

Much of the affidavit serves to clarify, rather than contradict, the circumstances under which certain statements were made. For instance, Plaintiff's affidavit does not contradict Plaintiff's earlier testimony that he talked to his superior about reassigning Marion to engineering. Rather, the affidavit just outlines the circumstances that lead up to Plaintiff making this request.

## DISCUSSION

To grant summary judgment, the court must determine that in the record before it there exists "no genuine issue as to any material fact," and "that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the court will view the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.* A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *See id.* at 250. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### A. Title VII

#### 1. The Merits

■ Taylor asserts claims under Title VII and ACRA for retaliatory discharge. To establish a prima facie case under Title VII, Taylor must show: (1) he was engaged in a protected activity; (2) that he was subjected to adverse employment action by his employer; and (3) that there was a causal link between the protected activity and the adverse employment action. *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir.1984). Once the plaintiff has established a prima facie case, the burden shifts to the employer to show a legitimate business reason for its actions. *Id.; Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779, 781 (9th Cir.1976). If the employer accomplishes this task, the Plaintiff must offer evidence to show that the reason offered is a pretext for illegal retaliation. *Wrighten*, 726 F.2d at 1354.

#### a. Prima Facie Case

First the Plaintiff must establish that he was engaged in a protected activity. Defendants argue that none of Plaintiff's actions suggest that he took steps to deter any discriminatory conduct by ScottPolar or its employees toward Ms. Marion. Rather, Defendants contend that Plaintiff actually took discriminatory steps toward Marion. Defendants point to the fact that Plaintiff, by his own account remained silent when Pope indicated that Marion was a problem and had to go. Furthermore, Plaintiff allegedly took Marion's truck away solely because she was pregnant, and he sought to have Marion transferred to engineering. These facts, say Defendants, establish that Plaintiff was not engaged in a protected activity and cannot establish the first prong of his prima facie case. His argument against summary judgment must, therefore, fail. *See Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754 (9th Cir.1997).

However, Plaintiff contends that he openly refused to reprimand Marion during, what he contends, was a witch-hunt to establish cause to fire a pregnant employee. Moreover, Plaintiff contends that he gave Marion work when he knew that it would anger Pope and Krieger and that he openly expressed (to Krieger) his dissatisfaction with ScottPolar's treatment of Marion. Finally, his decision to

---

However, Defendants object to these added circumstances on the ground that they contradict earlier testimony. There is no contradiction on these points. As a whole, the affidavit can be said to explain and present the context in which statements were made, rather than to contradict the statements altogether and create a question of fact. Thus, the court does not find that the affidavit, as a whole, is a sham created to contradict earlier statements for the sole purpose of creating a question of material fact. Accordingly, the court will consider the affidavit.

take away Marion's truck was based only on the fact that other individuals had taken away her foreman responsibilities and she no longer needed the truck, while another employee did. Marion herself testifies that she did not believe that Taylor was the problem, but that, in fact, others at ScottPolar were.

The evidence suggests that Marion was most likely the victim of some level of unkind treatment. The treatment may have been discriminatory because of her pregnancy. More importantly, there is also some evidence to support the belief that Taylor thought that ScottPolar's treatment of Marion was discriminatory, and that he was against such treatment. It is not important that Marion actually was discriminated against. It is only important that Taylor believed that she was and that he acted to prevent such discrimination from occurring, or refused to participate. The evidence of Taylor's actions (refusing to write up Marion and allowing Marion to work) is enough to create a question of material fact as to whether Taylor refused to discriminate against Marion. Such refusal is a protected activity; thus, there is a question of fact as to whether Taylor participated in a protected activity. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085–86 (3rd Cir.1996)("[P]rotesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct.") (citations omitted); 42 U.S.C. § 2000e–3(a).

■ Next, it is undisputed that the company fired Taylor. Thus, the second prong, negative employment action, is easily met. Therefore, the remaining question is whether there was a causal connection between Taylor's protected activity and his discharge from ScottPolar.

Defendants base much of their summary judgment motion on the contention that Plaintiff never openly objected to any of the Defendants alleged discriminatory actions, and therefore, Defendants were not aware of his protected activity when discharging Plaintiff. If true, this contention would negate Plaintiff's prima facie case because Plaintiff would be unable to establish a causal connection between his protected activities and his discharge. *See, e.g., Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994).

Again, Defendants rely in large part on the fact that Plaintiff did not openly object when Pope indicated his intentions to get rid of Marion. If the sole party responsible for the adverse action against an individual engaged in a protected activity is unaware of that protected activity, there can be no liability under Title VII. *See Grizzle*, 14 F.3d at 267–68; *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir.1983). Plaintiff himself admits that he thought it better to remain silent at the time Pope expressed his intentions. However, Plaintiff refused to participate in the alleged plot, if one existed, when he refused to write-up Marion for theft and mischarging. He stated that he refused because he believed that the charges were unreliable and that the company targeted Marion because she was pregnant. Reasonable individuals might piece together this puzzle to conclude that Plaintiff did not approve of the discriminatory action. Furthermore, Plaintiff's decision to give Marion work when she was pregnant also indicates that Plaintiff refused to discriminate against Marion on the basis of her pregnancy and the company would logically be aware of this refusal. As such, it cannot be said that no reasonable jury could conclude that Plaintiff was fired because he refused to discriminate against Marion, a pregnant woman.

■ Defendants also rely on the argument that Mr. Barnett approved the decision to fire Plaintiff, and he had no knowledge of Plaintiff's activities. Barnett did interview Pope, Krieger and Taylor and may have obtained some limited knowledge of the activities surrounding Marion's complaints. On the other hand, there is a good possibility that he was not exposed to, nor aware of, Taylor's alleged refusals to discriminate against Marion. However, Mr. Barnett merely gave advice to Pope and Smith. He was not the responsible party in the discharge process. Rather, he offered Defendant Pope three alternatives. Pope ultimately chose to discharge the Plaintiff. As discussed above, for summary judgment purposes, Pope can be said to have had sufficient knowledge of the circumstances surrounding Marion's complaint, the alleged

discrimination against her, and Plaintiff's resistance to it. Thus, Barnett's participation does not insulate Defendants from liability.

### b. Legitimate Business Reason

■ Defendants contend that even if Plaintiff establishes a prima facie case, which the court has determined he has, it had a legitimate reason to fire Plaintiff. Defendants contend that Plaintiff discriminated against Marion himself, and therefore he was justifiably fired.

Of course, ScottPolar would be justified, in fact required, to take action against its supervisors for illegal discrimination against their subordinates. However, in this particular case, there is a question of fact as to whether Plaintiff was truly fired for the proffered legitimate reason.

Defendants claim that Plaintiff discriminated against Marion by taking her truck away from her because she was pregnant. Plaintiff claims that Pope participated in the decision to take away the truck, but he was never disciplined or investigated.[3] Plaintiff's discharge occurred after Marion's complaint to ScottPolar. However, Marion herself claims that she was concerned with several events, including the removal of her foreman title and the fact that no one assigned her construction work. The company took no action against Pope and Krieger, or individuals other than Taylor, as a result of Marion's complaints; however, there is little dispute that these individuals were, in part, responsible for actions against Marion.

Furthermore, Marion's truck was never returned to her following Taylor's discharge. In light of the fact that the company supposedly fired Taylor for taking the truck away, it seems contradictory that the company did not remedy the situation by returning the truck. Of course, this situation is not conclusive proof that the company was reacting to Taylor's protected activities, as the company may simply have disliked Taylor and seized upon a convenient opportunity to fire him.

Furthermore, it is entirely possible that Pope and Smith truly believed that Taylor discriminated against Marion and they properly terminated him because of it. However, not only do material factual disputes exist, summary judgment at this time would require an impermissible weighing of evidence.

Title VII does not protect employees from being fired without cause, or from being fired on account of something that they truly did not do. Rather, the statute protects individuals from being fired on account of a protected activity. It is entirely possible that Defendants may have had some ill-will toward Plaintiff, and may have used Marion's complaint as a pretext for firing Plaintiff. The evidence, however, is not overwhelming that the legitimate reason offered to fire Plaintiff (Marion's complaint) was truly a pretext for retaliation because of his protected activity. One could reasonably conclude that ScottPolar and Kenneth Pope simply did not like the Plaintiff. This possibility is not, however, enough to grant summary judgment.

The question on summary judgment is whether there is a material fact dispute. If no facts are in dispute, the court must determine whether no reasonable jury *could* conclude that the employer violated Title VII before granting summary judgment. The court must approach this task with an abundance of caution. Viewing the evidence in the light most favorable to Plaintiff, the court concludes that a reasonable jury could find for the Plaintiff, and therefore will deny summary judgment.

### 2. Individual Defendants

Plaintiff has alleged Title VII and ACRA claims against both ScottPolar, his employer, and individuals Pope and Kreiger. It appears from the complaint that Plaintiff means to pursue claims against these Defendants in both their official and individual capacity.

■ While the wording of Title VII suggests that agents of employers may be held

---

**3.** Defendants argue that Plaintiff alone made the decision to take away the truck and that Plaintiff made up all details of Pope or Krieger's involvement to avoid summary judgment. Barnett, the official who investigated Marion's complaint, testified that Plaintiff told him that the decision was his alone. However, in light of the fact that the

court has determined that the affidavit is not a sham, and the fact that the court cannot judge the credibility of witnesses at this point, it must consider this fact disputed. Regardless, the remaining circumstances surrounding Plaintiff's discharge are enough to create a question of fact without this evidence.

liable under the statute, the Ninth Circuit has construed this wording to "incorporate respondeat superior liability into the statute." *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993). It is well settled in this circuit that Defendants may not be sued in their individual capacity under Title VII. *Id.; Ortez v. Washington County,* 88 F.3d 804 (9th Cir.1996); *Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.1995). Courts have allowed, however, individual defendants to be sued in their official capacity. *See Ortez,* 88 F.3d at 808–09. However, the employer alone is liable for any violation of Title VII; thus, claims against the individuals in their official capacity merge into claims against the employer. *See Gary,* 59 F.3d at 1399 (citing *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993)). Therefore, Plaintiff's claims against Pope and Krieger are unnecessarily repetitive of Plaintiff's claims against ScottPolar. Accordingly, summary judgment is granted as to Defendants Pope and Krieger.

*B. ACRA*

█ The Arizona Civil Rights Act is modeled after Title VII, and is therefore construed essentially the same and federal case law is instructive. *Hawkins v. State,* 183 Ariz. 100, 900 P.2d 1236, 1240 (Ct.App.1995)(citing *Timmons v. City of Tucson,* 171 Ariz. 350, 830 P.2d 871, 875 (Ct.App. 1991)). Thus, if Plaintiff successfully defeats a summary judgment motion based on the merits of his Title VII claim, his ACRA claim will also withstand such challenge. In light of the court's finding above, Plaintiff's ACRA claim is potentially meritorious and will withstand summary judgment. However, Defendants raise an additional challenge that the claim duplicates the Title VII count, and therefore, summary judgment is warranted.

█ Defendants offer no relevant case law to support the contention that Plaintiff may not pursue a claim under both Title VII

and ACRA. Rather, Defendants cite *Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991, 993–94 (D.Haw.1988). *Lapinad* stands for the proposition that Plaintiff's may not pursue retaliation claims under the state common law "public policy" exception because Title VII *and state statutes* provide a remedy. The case does not stand for the proposition that a Plaintiff may not pursue both a state and a federal claim under anti-discrimination *statutes.* In fact, the text of 24 U.S.C. § 2000e–7 suggests that Title VII was *not* meant to replace state statutes, but rather to compliment them:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

Moreover, the court conducted extensive independent research and was unable to uncover any holding that would suggest claims under identical state statutes may not be pursued. Accordingly, the court declines to grant summary judgment as to this claim (except as to the individual Defendants discussed above).

C. *Punitive Damages*

Under the Civil Rights Act of 1991, a Title VII Plaintiff may seek and obtain punitive damages if he can show that the Defendant acted "with malice or with reckless indifference to [his] federally protected rights." 42 U.S.C. § 1981(a).

Defendants cite *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675 (1986), and contend that Plaintiff must prove "by clear and convincing evidence that Defendants acted with an 'evil mind' and that their actions were 'outrageous' and 'reprehensible.'" However, it is not clear that Defendant is correct in this assertion.[4]

---

4. Plaintiff responds to Defendant's argument by citing another Arizona case. The court does not agree that the proper law to apply in this instance is Arizona law. The Plaintiff cannot seek punitive damages without an underlying claim that allows such damages. Thus, examining Plaintiff's claims, the court is faced with the question of whether Plaintiff may be entitled to punitive damages under Title VII or the ACRA. *Cf. Jones v. Reno Hilton Resort Corp.,* 889 F.Supp. 408 (D.Nev.1995). Arizona law governs only the standard under Plaintiff's ACRA claim. *Cf., Jackson v. Pool Mortgage Co.,* 868 F.2d 1178, 1181 (10th Cir.1989) ("[F]ederal standards govern the determination of punitive damages under federal civil rights statutes.").

First, while the Civil Rights Act of 1991 provides little guidance, the United States Supreme Court has held that a preponderance of the evidence standard applies throughout Title VII cases. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Of course, this case did not consider punitive damages because Title VII did not allow for punitive damages at the time. A California court, however, has considered this question and concluded that *Price Waterhouse,* in conjunction with the wording of the statute, allows for a relaxed standard in comparison to California's Fair Employment and Housing Act:

> The standard for proving punitive damages under the 1991 Civil Rights Act is easier to satisfy than the standard under FEHA or section 1981. The Title VII punitive damages provision allows the award of punitive damages for "reckless indifference." This evidentiary standard is more lenient than that under either FEHA of [section 1981]; under FEHA only 'oppression, fraud, or malice' are actionable
> . . . .

*Stender v. Lucky Stores, Inc.,* 803 F.Supp. 259 (N.D.Cal.1992). However, even assuming that this California court was correct in finding that a Plaintiff must only establish, with a preponderance of evidence, reckless indifference, the case provides little guidance to the case at hand.

Federal courts have addressed the issue of punitive damages under Title VII with conflicting results. No Ninth Circuit opinion provides meaningful guidance, so this court is forced to look outside this Circuit for instruction. At least one Eighth Circuit opinion found that punitive damages may be supported by demonstrating intentional conduct alone; no "extraordinarily egregious" conduct is necessary. *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1065 (8th Cir.1997), *but see, Summit v. S–B Power Tool,* 121 F.3d 416, 422 (8th Cir.1997) ("Even assuming that there was sufficient evidence for a jury to conclude that the Company intentionally discriminated against [Plaintiff], there was not sufficient evidence of malice or reckless indifference to submit a punitive damages instruction to the jury."). Regardless of whether "extraordinarily egregious" conduct is required, however, other courts have been reluctant to find that the punitive damages standard under Title VII is one that is easily met. Rather, many, if not most, courts have required more than a mere showing of intentional discrimination:

> [A] plaintiff must go beyond proving that the "intentional unlawful discrimination was more likely than not the reason underlying the adverse employment decision in question." . . . Rather, the employee "must prove that the defendant employer engaged in the discriminatory practice 'with malice or with reckless indifference to the federally protected rights' of the employee." . . . To require otherwise, of course, would permit every employment discrimination claim to include a punitive damage award because every employment discrimination plaintiff must demonstrate an intentional unlawful discrimination.

*Tincher v. Wal–Mart Stores, Inc.,* 118 F.3d 1125 (7th Cir.1997) (citations omitted).

Lastly, we must consider whether [Plaintiff's] punitive damages award for retaliation can stand. To support a punitive damages award under Title VII, an employee must show that her employer acted with "malice or reckless indifference to [her] federally protected rights." "Malice" means " 'an intent to harm' " and "recklessness" means " 'serious disregard for

---

Plaintiff's complaint asks for punitive damages "resulting from Defendant's bad faith, evil intent and malicious state of mind." This language is similar the language of the Arizona standard. *See Linthicum,* 723 P.2d at 680–81. Thus, Plaintiff may be seeking punitive damages under the ACRA claim only. In addition, Plaintiff may be seeking to avoid the damages cap under Title VII. In any event, Arizona law would apply. However, the standard under Arizona law is more stringent than the standard under Title VII. *See Hyatt Regency Phoenix Hotel Co. v. Winston*

& *Strawn,* 184 Ariz. 120, 907 P.2d 506 (Ct.App. 1995) (requiring clear and convincing evidence of an evil mind and outrageous conduct); *Piper v. Bear Medical Sys., Inc.,* 180 Ariz. 170, 883 P.2d 407 (Ct.App.1993)(punitive damages not warranted without clear and convincing evidence that defendant acted knowingly or culpably, or that conduct was so egregious to infer evil mind). Thus, the court need not consider the Arizona standard unless it finds that summary judgment is *not* warranted on the punitive damages issue under the Title VII theory.

the consequences of [one's] actions'" ....
The evidence in this case showed only that the acts that could plausibly be deemed "malicious" or "reckless" were solely acts of [one supervisor], who was not considered part of [Defendant's] higher management. Such evidence is insufficient to hold [Defendant] liable for punitive damages. *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860 (11th Cir.1997) (citations omitted).

The court finds that the better reasoned cases are those that require a higher level of offensive conduct to award punitive damages. Defendants argue that the Plaintiff has failed to provide any evidence to establish Defendants' conduct warrants an award of punitive damages. The court agrees. Plaintiff has testified that no individual acted in a hateful manner, and the evidence does not establish especially egregious or offensive conduct. Furthermore, Plaintiff does not contend that individuals other than Pope and Krieger acted inappropriately towards him. He does not suggest Mr. Barnett was responsible for discrimination of any kind. It appears that any illegal activity was contained within, rather than widespread throughout, the company. Thus, no evidence suggests that punitive damages are warranted in this instance. Accordingly, the court will grant this portion of the motion for summary judgment.[5]

IT IS ORDERED denying Defendants' motion for summary judgment as to the corporation ScottPolar, but granting the motion as to Defendants Pope and Krieger. The clerk is ordered to terminate all claims against Defendants Pope and Krieger.

IT IS FURTHER ORDERED granting Defendants' motion for partial summary judgment in favor of individual Defendants and on the punitive damages issue.

---

**5.** This holding is warranted even if Arizona law is applied. Arizona law requires at least equally egregious conduct. *See supra; Linthicum,* 150 Ariz. 326, 723 P.2d 675. In fact, the Arizona standard appears to require an evil mind—a standard heightened beyond that of Title VII.