**James L. BIRD**

**v.**

**Daniel L. FIGEL; Michael Mack Mahan a/k/a Eastwood indiv; and Patrick J. O'Riordan, indiv & in his capacity as Civilian Confinement Officer of Allen County Sheriff's Dept.**

**Civ. No. F 88–60.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 22, 1989.

Hamid R. Kashani, William E. Marsh, Indianapolis, Ind., for plaintiff.

John O. Feighner, Snouffer, Haller & Colvin, Fort Wayne, Ind., for defendants.

## ORDER

### WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The issues have been fully briefed by the parties, and oral arguments were heard on October 26, 1989. For the following reasons, defendants' motion will be denied.

This cause arose out of the incarceration of plaintiff, James L. Bird, in the Allen County Lockup Facility in December, 1987 and in February, 1988. Bird alleged that the conditions of his confinement, pursuant to the sheriff's suicide watch policy, were unconstitutionally restrictive. Bird also alleged that Officers Michael Mack Mahan and Patrick J. O'Riordan intentionally or recklessly violated his constitutional rights during the December period of confinement. As to the allegations pertaining to Mahan and O'Riordan, Bird specifically al-

leged that they denied him water and told him to drink out of the toilet, denied him access to the telephone, denied him all personal hygiene effects, denied him visitation, denied him writing materials and postage, made unauthorized disclosures of the fact that he suffers from AIDS–related complex and were deliberately indifferent to his medical needs. Bird sued Sheriff Daniel L. Figel seeking compensatory damages for the December and February periods of confinement. Bird sued Officers Mahan and O'Riordan for compensatory and punitive damages for the December period of confinement.

The case went to trial before a jury on July 24, through July 27, 1989. The jury returned a verdict for Bird with an award of $600 compensatory damages against all three defendants for the December period of incarceration, $1000 punitive damages against Mahan and O'Riordan for the December period of incarceration and $200 compensatory damages against Figel for the February period of incarceration.

The defendants have moved for JNOV or new trial, asserting that the weight of the evidence was insufficient to support the jury award and that this court erred in allowing the plaintiff's expert to testify and to give his opinion based upon an incomplete and insufficient hypothetical question. Defendants further contend that this court erred in giving the jury an instruction on punitive damages and that the punitive damages instruction itself was an erroneous statement of law.

■ Preliminarily, this court must address the issues raised by defendants' submission of post-trial affidavits in which defendants contend that Bird admitted giving perjured testimony during the trial of this case.

Apparently, after the jury rendered its verdict in this case, Bird became the object of an inordinate amount of police attention. On the evening of August 12, 1989, Bird called his attorney to express fear for his safety because an unusual amount of police patrolling was going on in his immediate neighborhood and police were parking in

the alley behind his residence and coming to his door for reasons which appeared to be pretextual. Bird was drinking that evening and called for emergency medical attention from the Emergency Medical Systems (EMS) in Fort Wayne at approximately 3:00 A.M. In the past, the medics from EMS had been escorted by one or two police cars during emergency calls, however, on this occasion the medics were accompanied by 7 or 8 police cars. Bird requested that the police leave his premises, but they did not do so. One of the medics asked Bird to give him a beer can that Bird was holding. Bird threw the beer can at the medic and was arrested for battery when the can hit the medic in the chest. Bird was taken to the Allen County Lockup Facility and placed in the East Cell Block where there were several inmates in other cells. Bird was allowed to use the telephone, and called his attorney several times stating that he feared for his safety. After a couple of hours, Bird was moved to the West Cell Block where there were no other inmates.

According to the affidavit submitted by Jeffrey Edwards, an Allen County police officer, Bird asked to speak to Officer O'Riordan at about 10:00 A.M. on August 13, 1989, while he was alone in the West Cell Block. Edwards states that O'Riordan walked back to Bird's cell and carried on a conversation with Bird during which Edwards swears to have overheard Bird state that Mr. O'Riordan had nothing to do with what happened to him while he was in the Lockup in December, 1987, and that Bird claimed that his attorneys pushed him into having Officer O'Riordan in the lawsuit. Edwards also states that Bird told O'Riordan if he would help get Bird released, that Bird would sign a waiver on the money O'Riordan owed Bird due to the judgment in the civil suit.

In O'Riordan's affidavit concerning the events with Bird on August 13, O'Riordan states that he initiated conversation with Bird after observing Bird crying in his cell in the West Cell Block. O'Riordan states that Bird told him he was sorry for getting him caught up in the lawsuit, but in order to get Mahan, he could not drop O'Riordan

from the case. O'Riordan also states that during a later conversation between the two of them, Bird told him that he "got screwed" because Bird tried to get him out of the case but was told it would hurt the case and that Bird hated Mahan and that Mahan is who he wanted to get.

Defendants contend that the foregoing statements attributable to Bird "concern misstatements of fact which are admissions against interest by the plaintiff and perjured testimony by James Bird on August 13, 1989." Defendants insist that this court consider the affidavits as "confirmation" of the fact that Bird perjured himself when he testified at trial, and therefore, this court should grant their motion for a new trial.

Initially, it is *not* obvious to this court that the statements attributable to Bird are admissions of any sort, nor do they appear to be confirmation of perjury. The statements themselves do not indicate that Bird lied during the trial. Rather, the statements showed that Bird felt bad that O'Riordan was found equally culpable with Mahan when Bird himself felt that Mahan was more culpable. This does not mean that O'Riordan was not culpable at all. To the contrary, as O'Riordan's affidavit states, Bird still contends that O'Riordan personally denied him use of the telephone in December, 1987. Simply because Bird personally wanted Mahan held liable does not mean that O'Riordan did not also violate Bird's civil rights. Nothing in the affidavits shows that Bird misrepresented O'Riordan's conduct during the December, 1987, period of incarceration at the trial of this cause.

In addition, any statements Bird made in the West Cell Block in the Allen County Lockup were not made under oath. Under the circumstances of Bird's confinement on August 13, 1989, it is extremely likely that he would have said anything to get out of there. The fact that Bird may have chosen to lie to O'Riordan in an effort to get out of the Lockup in August, 1989, is not proof that he lied to this court under oath. Although this court has chosen to look at the affidavits submitted by the defendants, and

those submitted in opposition by the plaintiff, this court finds that they add nothing of merit to the motion for JNOV or a new trial.

## Motion for JNOV

■ Rule 50 of the Federal Rules of Civil Procedure allows a party who has made a motion for directed verdict at the close of the evidence to make a motion for judgment notwithstanding the verdict and to join with that motion for JNOV a motion for a new trial. However, the language of the Rule also indicates that the moving party "may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict." Because a motion for JNOV is technically only a renewal of the motion for directed verdict at the close of the evidence, it cannot assert a ground that was not included in the motion for directed verdict. *Johnson v. Rogers*, 621 F.2d 300, 305 (8th Cir.1980); 9 Wright & Miller, *Federal Practice and Procedure* § 2537 at 598 (1971).

■ An examination of the defendants' motion for a directed verdict at the close of the evidence indicates that the motion asserted that the evidence presented by the plaintiff was insufficient to warrant a finding in favor of plaintiff on any of his claims. Defendants specifically argued that the evidence was insufficient to establish that the extent of the sheriff's suicide watch policy was not rationally related to a legitimate penological concern, that there was no evidence that anyone tried to visit Bird, so he could not have been denied visitation, that there was no substantial evidence that Bird was denied use of the telephone, that there was no evidence that Bird suffered any damages whatsoever and that there was insufficient evidence that

Mahan or O'Riordan committed any acts which were wilful, wanton or malicious.[1]

The present motion for JNOV reasserts that the evidence presented at trial was insufficient to support the jury award of compensatory and punitive damages.[2] All of defendants' arguments are based on their perception of the evidence in this cause.

Initially, defendants contend that the weight of the evidence clearly establishes that the suicide watch policy, under which Bird was confined in December, 1987 and February, 1988, was rationally related to a legitimate government interest. Defendants rely on the fact that the suicide watch policy at the Allen County Jail had been approved and accredited by the National Commission on Correctional Health Care. However, Officer Stonebraker, medical director for the Allen County Jail, testified that inmates under the suicide watch policy at the Jail are also provided with enumerated necessities, rights and privileges under supervision. These amenities are not available to inmates at the Lockup Facility who are kept on suicide watch.

Defendants additionally argue that no weight should be given to the testimony of Dr. Stephen Dunlop, plaintiff's expert psychiatrist, who gave his opinion that the restrictions of the suicide watch policy were not reasonably necessary for prevention of suicide. Defendants argue that Dr. Dunlop's testimony should not have been allowed because he was not listed as a witness as prescribed by the Pre–Trial Order and that the hypothetical question posed to him was improper. This court has previously addressed defendants' complaint about plaintiff's failure to list Dr. Dunlop on the witness list. Dr. Dunlop was called as a rebuttal witness[3], and as such, plain-

---

1. Defendants also argued that there was no evidence that Sheriff Figel committed any acts in his individual capacity which violated Bird's constitutional rights. This argument is now moot since the jury only held Figel liable in his official capacity based upon the unconstitutionality of the suicide watch policy.

2. Defendants raise other arguments in their present motion which were not raised in the motion for a directed verdict at the end of plaintiff's case. These other arguments will be discussed later in this order as they are only properly raised by the motion for a new trial.

3. During the final pre-trial conference in this case, plaintiff was granted his request to call Dr.

tiff was not required to list him pursuant to the Pre–Trial Order. Furthermore, Dr. Dunlop was listed as a witness in plaintiff's Trial Brief and defendants were given the opportunity to depose Dr. Dunlop prior to trial. Defendants cannot now complain of surprise as to Dr. Dunlop's appearance.

■ Defendants also argue that the hypothetical question posed to Dr. Dunlop was improper because it did not ask whether the "particular" restriction (the suicide watch policy) was reasonable, but rather asked whether the withholding of "various enumerated privileges" was reasonable. This was not an improper form of question. The hypothetical question clearly asked Dr. Dunlop to consider the restrictions in a jail-type setting, clearly specified restrictions which were actually placed on the plaintiff pursuant to the jail's policy and clearly asked if the restrictions aided in the prevention of suicides as intended. Defendants had the opportunity on cross-examination to ask the question the way they wanted it asked. Their failure to do so does not make the form of question asked by the plaintiff improper. In addition, the final determination of whether the jail's suicide watch policy was rationally related to a legitimate, nonpunitive purpose was a fact determination to be made by the jury. To facilitate the jury's determination, this court gave Instruction No. 8 which read:

> The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state his opinion concerning such matters.
>
> You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience,

or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

The jury might have chosen to disregard Dr. Dunlop's testimony in making its factual determination and still have determined that the restrictions placed on the plaintiff were unreasonable based on a lay person's understanding of suicide. The facts are undisputed that pursuant to the suicide watch policy Bird was denied a change of clothing, a mattress, bedding of any sort, soap, towel, wash cloths, toothbrush, toothpaste, shaving items, toilet paper, commissary, visitors, papers, pencils, postage for letters, receiving or sending mail, and a Bible or other reading materials. The jury could also have reasonably discounted the accreditation received by the Jail for its suicide prevention plan because the facts established that there were less suicide restrictions in force at the Jail than at the Lockup Facility.

Defendants' further contentions rely upon their belief that the testimony of the plaintiff was not believable and that the testimony the defense presented was completely believable simply because the defendants had more witnesses to testify to their version of the facts. The evidence clearly presented two conflicting stories of the events of the December, 1987 period of incarceration. In deciding a motion for JNOV, "[a]ny conflicts in the evidence must be resolved in favor of the party winning the verdict." *Mathewson v. National Automatic Tool Co., Inc.*, 807 F.2d 87, 90 (7th Cir.1986). Quite simply, whether or not the events happened as the plaintiff alleged rested on the credibility of Bird, Mahan and O'Riordan. The jury obviously chose to believe Bird's version of the facts. Such a determination is not against the clear weight of the evidence. "A judgment n.o.v. may be granted only if there is not

---

Dunlop early because of Dr. Dunlop's unavailability to appear after the first day of trial. Although Dr. Dunlop appeared as a witness during plaintiff's case in chief, he remained a rebuttal witness. Dr. Dunlop was called for the sole purpose of rebutting defendants' contention that the restrictions placed on the plaintiff were constitutionally permissible under the circumstances because they were rationally related to a legitimate government interest.

evidence upon which a jury could properly return a verdict for the non-moving party." *Madison County Jail Inmates v. Thompson,* 773 F.2d 834, 838 (7th Cir.1985) (citations omitted). Bird testified and was subjected to cross-examination, and despite defendants' repeated protestations that Bird's testimony was completely incredible, it was evidence which the jury reasonably chose to believe.

Bird testified that during the December period of incarceration he was stripped and given only a white suicide gown to wear and placed in a cell with nothing in it except for a steel bed frame. He testified that he was denied all the aforementioned amenities pursuant to the suicide watch policy and in addition was denied access to the telephone by Mahan and O'Riordan who claimed they did not have any disinfectants to clean the phone after his use. He further testified that his cell had no working water outlet and when he requested drinking water from Mahan and O'Riordan, they told him to drink from the toilet. Bird testified that when he protested being ordered to drink from the toilet because it was dangerous to his health, Mahan told him it was alright because he was going to die anyway. Bird testified that Mahan and O'Riordan also verbally abused him, referred to him by obscene names, ridiculed him for being gay and having AIDS and openly discussed Bird's medical condition with, and in front of, other inmates. He also testified that his incarceration in December, 1987 was the most humiliating experience of his life and that since then he has suffered from nightmares and other traumatic experiences.

In addition, Bird testified that in February, 1988 he was again incarcerated in the Lockup Facility pursuant to the suicide watch policy. During this period he was incarcerated for 13 days during which period of time he was denied soap, toothbrush and toothpaste, mail, visitation with family or friends and reading materials including a Bible.

Clearly, there was sufficient evidence from which the jury could render a verdict in favor of the plaintiff for compensatory damages for both periods of incarceration and punitive damages for the December period of incarceration. Therefore, defendants' motion for JNOV based on their conclusions of credibility must fail.

### Motion for a New Trial

The standard for granting a motion for a new trial is governed by federal law. *Foster v. Continental Can Corp.,* 783 F.2d 731, 735 (7th Cir.1986); *Robinson v. Lescrenier,* 721 F.2d 1101, 1104 (7th Cir.1983). The jury's verdict must be accorded great deference, and a new trial may be granted only if the verdict is against the clear weight of the evidence. *Foster,* 783 F.2d at 735; *First Nat'l Bank of Kenosha v. United States,* 763 F.2d 891, 896 (7th Cir. 1985). The jury's verdict should not be set aside if there is any reasonable basis in the record for it. *Foster,* 783 F.2d at 735.

■ As previously discussed, defendants' arguments based on the weight of the evidence are meritless and cannot support defendants' motion for a new trial. In addition to those arguments raised initially in defendants' motion for a directed verdict, defendants contend that this court erred in instructing the jury on punitive damages and that the instruction was an incorrect statement of law. First, defendants argue that punitive damages cannot be awarded when the plaintiff's claim has no merit. Again, defendants insist that, based on the credibility of the witnesses, the plaintiff's claims failed. The analysis set forth above indicates that that is a false assumption and this aspect of defendants' challenge must therefore be rejected.

■ The second challenge by the defendants is that the instruction which this court gave regarding punitive damages was a misstatement of law. The instruction given read as follows:

In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

Plaintiff has made a claim for punitive damages only regarding his December, 1987 period of confinement against defendants Mahan and O'Riordan. Plaintiff has made no claim for punitive damages against defendant Figel or for any acts which occurred during plaintiff's incarceration in February, 1988.

If you find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual or compensatory damages, and you further find that the act or omission of the defendant, which proximately caused actual injury or damage to the plaintiff, was maliciously, or wantonly, or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper, as punitive and exemplary damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

Defendants specifically complain that the proper burden for sustaining an award of punitive damages is by clear and convincing evidence rather than by a preponderance and that an act which is "oppressively" done is insufficient to support an award of punitive damages.

There is no place in this case for defendants' argument that the more stringent "clear and convincing" standard adopted by the Indiana state courts should have been applied. "The scope of punitive damages in § 1983 actions is governed by the 'federal common law of damages' which imposes uniformity when enforcing the Civil Rights Acts." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir.1989) (quoting *Lenard v. Argento*, 699 F.2d 874, 897 (7th Cir.1983)). Other district courts have specifically rejected defendants' request for a more stringent standard for an award of punitive damages. In *Patrykus v. Gomilla*, Nos. 86c9748, 87c2083, 87c7925, 1989 WL 8610 (N.D.Ill., Feb. 1, 1989), the court rejected defendants' argument that the plaintiff should have to prove his claim for punitive damages beyond a reasonable doubt, stating:

The Seventh Circuit has acknowledged that to recover punitive damages, a plaintiff must prove his or her case by a preponderance of the evidence. *See, Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 318 n. 2 (7th Cir.1985). Defendants' citations to state authority do not arise in the context of civil rights cases and are not persuasive.

*Id.* at 8. In *Norris v. City of Easton*, No. 88–3028, 1989 WL 49520 (E.D.Pa., May 8, 1989), the court refused to adopt the clear and convincing standard stating that, "the law has not adopted this more stringent burden in regard to federal civil rights litigation." *Id.* at 9.

Defendants' objection to the inclusion of "oppressive" conduct in the instruction is completely meritless. In *Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 289 (7th Cir.1985), the Seventh Circuit expressly approved the standard instruction taken from 3 Devitt & Blackmar, Federal Jury Practice and Instructions § 85.11 (3d ed. 1977) which includes the term "oppressive". Therefore, defendants' arguments against the award of punitive damages fail, and that award does not justify the granting of a new trial.

### Conclusion

For the reasons set forth above, defendants' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, is hereby DENIED.