COMMUNITY HOSPITAL, Petitioner,

v.

Erika FAIL, Respondent.

No. 97SC558.

Supreme Court of Colorado,
En Banc.

Nov. 30, 1998.

668

Elder & Phillips, P.C., Mark Luff, Keith Boughton, Grand Junction, for Petitioner.

Keith Killian & Associates, P.C., J. Keith Killian, James P. Guthro, Grand Junction, for Respondent.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Deputy Attorney General, Timothy R. Arnold, Deputy Attorney General, Gregg E. Kay, First Assistant Attorney General, Beverly Fulton, Assistant Attorney General, Civil Litigation Section, Denver, for Amicus Curiae State of Colorado.

Hall & Evans, L.L.C., Alan Epstein, Thomas J. Lyons, Tracey P. Robinson, Denver, for Amici Curiae Colorado Defense Lawyers Association and Colorado Counties, Inc.

Barry D. Roseman, Thomas A. Feldman, Laurie Scott Paddock, Fox & Robertson PC, Amy F. Robertson, Denver, for Amicus Curiae Plaintiff Employment Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Fail v. Community Hospital,* 946 P.2d 573 (Colo.App.1997), to resolve several issues arising under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12117 (1994) (ADA). First, we must determine who bears the burden of persuasion in a discrimination case under the ADA when there is a factual dispute as to whether the employer offered to make a reasonable accommodation to an employee's disability.[1] We hold that when a disabled employee has established a prima facie case under the ADA, the burden shifts to the employer to prove by a preponderance of the evidence that it either offered reasonable accommodation or that such accommodation was an undue hardship.

Second, we must decide whether the trial court erred in failing to instruct the jury on the definition of "qualified individual with a disability." We find that in the context of the instructions given in this case, the omission of this instruction did not constitute reversible error.

The third issue on review is whether reasonable accommodation under the ADA includes reassignment to a lower-paying position. We hold that an employer may satisfy the ADA by offering reassignment to a lower-paying position if the disabled employee is not qualified for the vacant positions at her current rate of pay, if she is qualified to perform the lower-paying position, and if the employer typically reduces the salary of nondisabled employees who transfer to such positions.

Finally, we must determine the appropriate burden of proof for punitive damages under 42 U.S.C. § 1981a (1994). Prior to the adoption of § 1981a, we held in *Boulder Valley School District R–2 v. Price,* 805 P.2d 1085 (Colo.1991), that federal law did not provide a rule of decision regarding the burden of proof for punitive damages in a 42

1. We granted certiorari on the issue of "[w]hat is the proper burden of proof in a discrimination case under the ADA when an employee seeks and refuses reassignment to a new job." We find that certiorari was improvidently granted on this issue because the facts are not accurately stated in the petitioner's formulation of the issue. However, the parties' briefs and the record address the issue as reframed above. Therefore, we elect to address that issue. *See Lunsford v. Western States Life Ins.,* 908 P.2d 79, 85 n. 14 (Colo.1995).

U.S.C. § 1983 claim. We now hold based upon our review of federal law addressing the burden of proof for punitive damages in civil rights claims that *Boulder Valley* incorrectly found that federal law was inadequate. Therefore, we adopt the analysis of applicable federal decisions and hold that the proper standard for punitive damages under both §§ 1983 and 1981a is a preponderance of the evidence. Part III of *Boulder Valley* is overruled.

I.

On December 10, 1992, petitioner Community Hospital (Community) fired an employee, the respondent Erika Fail, because a knee injury prevented her from performing the essential functions of her job as a rehabilitation aide. Fail, who had worked for nearly a decade in a variety of positions at the hospital, knew that she could no longer continue the heavy lifting required of a rehabilitation aide. Therefore, two days before Fail was fired, she interviewed with Janie Searcy, the Medical Records Department Supervisor, regarding an internal transfer to a vacant position as a medical records clerk.

Fail learned that, even though the medical records clerk position was assigned the same salary range as that of a rehabilitation aide, she would not be paid her then-current salary. Community assigns a salary range to each of its positions. It further subdivides each salary range into eleven steps so that an employee who works in a particular position can receive performance increases through the eleven steps of the salary range. As a rehabilitation aide, Fail earned $8.46 per hour and was classified at the ninth step. According to Community, at the time Fail was terminated, it had a policy that employees who transferred into a particular position could not be paid more than the sixth step of that position's salary range.

During Fail's interview with Searcy, Fail was told that a medical records clerk started at step one or $6.25 per hour. At that wage, it would have taken Fail 9 1/2 years to regain her then-current pay of $8.46 per hour. Because she thought this wage was too low, Fail discontinued the interview. Community claims that the next day, Searcy saw Fail in the hallway and informally offered her the medical records clerk position starting at $7.66 per hour, the sixth step on the pay scale. Fail denies that this conversation occurred. Evidence presented to the jury shows that Community took steps to terminate Fail before this alleged offer was made.

In addition to the vacant medical records clerk position, two other positions were open at the time of Fail's firing. Community admitted that Fail was qualified for the vacant medical records clerk position but denied that Fail was qualified for the other two positions because at $8.46 per hour, her salary was higher than the sixth step, violating Community's transfer policy. Community did not contend that Fail was unable to perform the duties of those other jobs. Ten days after her termination, Fail unsuccessfully requested reinstatement.

Subsequently, Fail filed a complaint in Mesa County District Court alleging that Community's failure to reassign her to a vacant position was a refusal to make a reasonable accommodation of her disability in violation of the ADA. At trial, Community tendered proposed jury instruction K defining "qualified individual with a disability." In addition, Community offered proposed jury instruction C stating that the burden of proof for punitive damages is beyond a reasonable doubt. The trial court rejected both of these instructions in favor of jury instruction 13 stating that Community was required to prove by a preponderance of the evidence that it reasonably accommodated Fail's disability "in regard to reassignment to vacant positions for which she was qualified" and jury instruction 22 stating that the burden of proof on punitive damages is a preponderance of the evidence.

In response to a special interrogatory, the jury found that Community violated the ADA because it "failed to reasonably accommodate Fail in regard to her reassignment to any one of the [three] positions that were vacant." The jury awarded Fail $17,390 in back pay, $99,794 in front pay, and $100,000 in punitive damages. The court entered judgment on the jury verdict and awarded $4,041.64 in prejudgment interest, $50,803.30

in attorney fees, and $10,546.79 in costs. The judgment totaled $282,575.73.[2] Both parties appealed; however, only Community's issues are before this court.

Community argued to the court of appeals that jury instruction 13 improperly shifted to Community the burden of proof on the issue of reasonable accommodation. *See Fail,* 946 P.2d at 576. The court of appeals applied the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Fail,* 946 P.2d at 577. Under *McDonnell Douglas,* if Fail established a prima facie case of disability discrimination under the ADA, the burden would shift to Community to rebut that evidence. Community could have satisfied this burden by producing evidence that it provided a reasonable accommodation, including reassignment. Since the jury instruction stated that the jury could find for Community if it found that Community had reasonably accommodated Fail, the court of appeals held that the jury was properly instructed on the burden of proof. *See Fail,* 946 P.2d at 577.

In addition, Community claimed that the trial court erroneously rejected its proposed jury instruction K defining "qualified individual with a disability." *See Fail,* 946 P.2d at 579–80. Community's proposed instruction stated that a person who meets the definition of a qualified individual with a disability would subsequently lose that status if the disabled employee did not accept reasonable accommodation. Rejecting this argument, the court of appeals held that the trial court instructed the jury on the functional equivalent of instruction K. *See id.* at 580.

Community also asserted below that the ADA does not require an employer to reassign an employee contrary to the employer's non-discriminatory policies. Therefore, Community claimed it was not required to offer reassignment because the compensation allowed under its transfer policy precluded reassignment of Fail at her then-current rate of pay. *See Fail,* 946 P.2d at 579. Since the ADA's interpretive guidelines permit, under certain circumstances, transfers with reduced pay, the court of appeals rejected Communi-

ty's argument as contrary to the purposes and language of the ADA. *See id.*

Finally, Community argued that jury instruction 22 erroneously stated that the burden of proof on punitive damages under 42 U.S.C. § 1981a (1994) is a preponderance of the evidence. *See Fail,* 946 P.2d at 580. Upholding the trial court, the court of appeals held that the correct standard is a preponderance of the evidence. *See id.* at 581.

After briefly reviewing the ADA, we will address each issue.

## II.

The Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12117 (1994), provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12112(b)(8).

### A. The Applicable Test

The Tenth Circuit Court of Appeals, in *White v. York International Corp.,* 45 F.3d 357 (10th Cir.1995), created a test for establishing ADA liability when a "covered entity" admits, as Community has done in this case, that it took adverse employment action against a disabled employee because of that individual's disability. *See White,* 45 F.3d at 360–61. Even if the employer admits that it took the adverse employment action because of the employee's disability, the employee is not automatically entitled to recover under the ADA. Instead, *White* requires a showing by the employee: (1) that she is a disabled person within the meaning of the ADA; (2)

---

**2.** The order incorrectly stated that the judgment  totaled $282,575.63, a difference of $0.10.

that she is qualified, that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *See White,* 45 F.3d at 360–61 (citing *Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir.1994); *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir.1994); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993); *Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993); *Gilbert v. Frank,* 949 F.2d 637, 640–42 (2d Cir.1991); *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990)).

■ Our first task is to determine whether the test created in *White* should be adopted in Colorado. State courts have concurrent jurisdiction with federal courts in ADA cases. *See New Jersey Citizen Action v. Riviera Motel Corp.,* 296 N.J.Super. 402, 686 A.2d 1265, 1271 (N.J.Super.Ct.App.Div.1997). Although the Supremacy Clause demands that state law yield to federal law, neither federal supremacy nor any other principal of federal law requires that a state court's interpretation of federal law give way to a federal court's interpretation other than that of the United States Supreme Court. Thus, we are not bound by federal ADA decisions of the lower federal courts *See People v. Barber,* 799 P.2d 936, 939–40 (Colo.1990). As a result, we look to the federal decisions for guidance, and we follow the analysis that we find persuasive.

Instead of applying the test set out in *White,* the court of appeals applied the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Fail,* 946 P.2d at 577 (stating that "[o]nce an ADA plaintiff establishes a *prima facie* case [of a violation of the ADA], there exists a rebuttable presumption of discrimination. The employer can meet its burden [of rebutting that presumption] with evidence of a legitimate nondiscriminatory reason for its actions."). *White* formulated a different test because the Tenth Circuit Court of Appeals determined that the purpose of *McDonnell Douglas* has been achieved (i.e., an inference of discrimination has been raised) when the employer admits that it terminated the employee because of that employee's disability. *See White,* 45 F.3d at 361 n. 6.

Although we agree that the employer's admission raises an inference of discrimination, the second element of the test created in *White* is not very helpful in resolving the case before us because it is stated in conclusory terms paraphrasing the statute. It does not clarify the scope of the employee's burden in light of the employer's duty to provide reasonable accommodation. Thus, we adopt the first and third elements of *White:* that the employee must prove she was a disabled person within the meaning of the ADA and that she was terminated because of her disability. We expand *White* 's second element and adopt a test based on our analysis of the ADA's duty of reasonable accommodation and its corresponding affirmative defense of undue hardship.

■ Accordingly, we adopt the following test for when an employee seeks to establish that her employer violated the ADA by failing to offer reasonable accommodation. As part of her prima facie case, the employee must show: (1) that she is a disabled person within the meaning of the ADA; (2) that she was otherwise qualified for her current position; (3) that she was terminated from that position because of her disability; (4) that she requested reasonable accommodation either within her current position or through transfer to a vacant position for which she was qualified; and (5) that, despite her request for reasonable accommodation by transfer to a vacant position, the employer continued to seek applicants for the vacant position or hired persons who possessed the disabled employee's qualifications. Once this showing has been made, the burden shifts to the employer to prove either undue hardship or that it made an offer of reasonable accommodation. At all times, the employee bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Our analysis follows.

1. Reasonable accommodation and undue hardship

The ADA defines illegal discrimination as "not making reasonable accommodations to

the known physical or mental limitations of an otherwise qualified individual with a disability, ... *unless such covered entity can demonstrate* that the accommodation would impose *an undue hardship* on the operation of the business of such covered entity." *See* § 12112(b)(5)(A) (emphasis added). There is no dispute that the underscored plain language of the ADA imposes upon the employer the burden of proving the affirmative defense of undue hardship. *See, e.g., Willis v. Conopco,* 108 F.3d 282, 286 (11th Cir.1997). The emphasized language could be read as limiting the employer's burden to prove only this affirmative defense. We reject that narrow reading because the additional language quoted above necessarily imposes a duty on an employer to make reasonable accommodation.

■ To determine the scope of the employer's duty to make reasonable accommodation, we must first distinguish the definitions of reasonable accommodation and undue hardship. Reasonable accommodation under the ADA may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position ... and other similar accommodations for individuals with disabilities." § 12111(9)(B). The employee is required to suggest to the employer one or more methods of reasonable accommodation. *See White,* 45 F.3d at 362. However, an employer is not required to promote a disabled employee, create a new position for that employee, or reassign that employee to an occupied position. *See id.* In contrast to reasonable accommodation, undue hardship relates to the difficulty of making the proposed accommodation. *See* § 12111(10)(A) (defining undue hardship as "an action requiring significant difficulty or expense").

Fail cites three cases for the proposition that "it is accepted in disability discrimination litigation that it is the employer's burden to prove inability to accommodate." *See Gilbert v. Frank,* 949 F.2d 637, 643 (2d Cir.1991) (shifting the burden of persuasion to federal employers under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (1994)); *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 310 (5th Cir.1981) (shifting the burden of persuasion to federal employers under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994), once the plaintiff has made out a prima facie case of handicap discrimination); *Zamudio v. Patla,* 956 F.Supp. 803, 809 (N.D.Ill.1997) (imposing on the employer the burden of showing that its proposed accommodation was reasonable under the ADA).

Our review of the case law demonstrates that the issue is far from settled. For example, the Tenth Circuit Court of Appeals held in *White* that the employee must first make a facial showing that reasonable accommodation is possible. *See White,* 45 F.3d at 360–61. If this showing is made, the court held that the employer's burden is limited to producing evidence of its inability to accommodate the disabled person. *See White,* 45 F.3d at 361. At all times, the court stated, the employee bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination. *See id.* (citing *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742).

*White* does not provide much guidance regarding the type of facial showing that is required. In that case, the employee, White, did not present any evidence beyond his "subjective opinion" that reasonable accommodation was possible. White's employer produced affirmative evidence of its inability to accommodate White's disability by showing that White's disability prevented him from performing the work required in the positions at issue; that one position would have required a promotion; and that there were no vacancies. *See White,* 45 F.3d at 362. As a result of White's failure to suggest any method of reasonable accommodation, the court held that White failed to prove that he was a qualified individual with a disability.

We agree with the court in *White* that an employee must do more than merely state that reasonable accommodation is possible. However, in contrast to the employee in *White,* Fail has done more than state that such accommodation is possible. She has shown that three positions were vacant, that she applied for one of those positions, and that Community continued to seek applicants

from persons who had Fail's qualifications. She also has shown that she was qualified for the vacant positions because she could meet Community's established job requirements. To require her to provide additional evidence of Community's ability to hire her in the vacant positions goes too far because it blurs the distinction between reasonable accommodation and undue hardship. For example, to require Fail to prove that Community could have waived its transfer policy would shift the burden of proving the affirmative defense of undue hardship to Fail and away from Community.

■ This risk of blurring the distinction between reasonable accommodation and undue hardship was recognized by the Court of Appeals for the District of Columbia in *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993). As a result, the *Barth* court refined the employee's burden of proving the employer's ability to make reasonable accommodation under section 501 of the Rehabilitation Act.[3] It held that under section 501, an employee must show that his suggested method of accommodation is reasonable "in the run of cases." *See id.* at 1187. The phrase "in the run of cases" requires a showing that a typical employer in the industry would be able to make the accommodation. The burden then shifts to the employer to prove that a suggested accommodation poses an undue hardship as applied to that particular employer.

This analysis recognizes the employee's limited access to information about an employer's internal policies or confidential human resources information. For instance, the evidence necessary to resolve the factual dispute in this case over whether or not Community offered Fail the medical records clerk position provides an example of information that is often exclusively kept by an employer. The confidential nature of a job offer necessarily limits the employee's access to demonstrative proof that the employer made an offer. The employee is likely to be limited to her memory of verbal exchanges in order to prove a negative, i.e., that no such offer was made. In contrast, the employer

has better access to testimonial or demonstrative evidence that an offer was actually made or that an employee was not qualified for a particular position. Adopting Community's position likely would cause an employee like Fail to undertake extensive discovery of the employer's policies and its treatment of other employees.

In recognition of an employee's limited access to such evidence, other federal courts of appeals have applied *Barth* to ADA cases. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir.1997); *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir.1996); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183, 1184 n. 10 (6th Cir.1996). In *Willis*, the court cited *Barth* for the proposition that "the question of whether an accommodation is reasonable ... is more of a 'generalized' inquiry than the question of whether an accommodation causes a 'hardship' on the particular employer that is undue." *Willis*, 108 F.3d at 286 n. 2. Therefore, the *Willis* court limited the plaintiff's inquiry to proving that a reasonable accommodation exists. This reasoning was adopted in *Riel*, where the court held that the employee need only propose accommodations that are reasonable "in the run of cases." *See Riel*, 99 F.3d at 683. Likewise, the court in *Monette* recognized that "determining whether a proposed accommodation is 'reasonable' requires a factual determination of reasonableness ... untethered to the defendant employer's particularized situation." *Monette*, 90 F.3d at 1184 n. 10.

In light of these cases and the employee's limited access to relevant evidence, we limit the employee's burden of proof on the issue of reasonable accommodation to showing that she either asked for reasonable accommodation in her current position or that she applied and was qualified for a vacant position. In addition, the employee must show that the employer continued to seek or hire applicants for the vacant position from persons who possessed the disabled employee's qualifications.

---

**3.** Precedent from Title V of the Rehabilitation Act of 1973 is to be used in interpreting the ADA. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1060 n. 4 (5th Cir.1997) (citing 54 Fed.Reg. 35544, 35545); *see also* 29 C.F.R. § 1630.1(c) (1998).

Thus, we adopt the following test for when an employee seeks to establish that her employer violated the ADA by failing to offer reasonable accommodation of her disability. As part of her prima facie case, the employee must show: (1) that she is a disabled person within the meaning of the ADA; (2) that she was otherwise qualified for her current position; (3) that she was terminated from that position because of her disability; (4) that she requested reasonable accommodation either within her current position or through a transfer to a vacant position for which she was qualified; and (5) that, despite her request for reasonable accommodation by transfer to a vacant position, the employer continued to seek applicants for the vacant position or hired persons who possessed the disabled employee's qualifications. Once this showing has been made, the burden shifts to the employer to prove either undue hardship or that it made an offer of reasonable accommodation. At all times, the employee bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 507, 113 S.Ct. 2742.

### 2. Burden of proof on offer of reasonable accommodation

We apply the test set out above to the case at bar. Community stipulated that Fail met the definition of a disabled person under the ADA, that Fail was otherwise qualified for her current position, and that she was terminated because of her disability. Fail conceded that it was not possible for Community to accommodate her in the rehabilitation aide position. Accordingly, she put forth evidence that she was qualified for a transfer to the three open positions, including the position as medical records clerk. The record demonstrates that despite Fail's request for reasonable accommodation by a transfer to the vacant medical records position, Community continued to seek applicants and eventually filled that position. Therefore, Fail made out her prima facie case and the burden shifted to Community to prove undue hardship or that it made reasonable accommodation.

Community stipulated that Fail was qualified for the medical records clerk position, but not at her pay rate of $8.46 per hour. At trial, Community asserted that its policy of limiting transfers to the sixth pay step prevented Fail from being qualified for any of the three vacant positions. However, Community presented evidence (which Fail disputed) that it offered Fail the medical records position at $7.66 per hour, the sixth step, and that she turned down the offer because she thought the pay was too low. As a consequence, Community claimed that Fail lost her status as a qualified individual with a disability because a disabled employee who rejects reasonable accommodation no longer meets that element and cannot recover under the ADA. *See Kuehl v. Wal–Mart Stores, Inc.*, 909 F.Supp. 794, 803 (D.Colo. 1995).

Assuming that the lower wage of $7.66 per hour did not make the alleged offer unreasonable, Community's assertion is correct. If Fail rejected that offer of reasonable accommodation, she would no longer be considered qualified. However, Fail claimed that Community never offered reassignment to the vacant medical records position or, in the alternative, that the rate of pay was so low that the transfer was not a reasonable accommodation.

■ The resolution of this factual dispute depends, in part, upon who bore the burden of proof at trial. The trial court gave the jury instruction 13 stating that Community had to prove by a preponderance of the evidence that it reasonably accommodated Fail by offering reassignment to vacant positions for which she was qualified. Relying on *White*, Community argues to this court that the trial court improperly shifted the burden because Fail is required either to (1) disprove that the job offer was made or (2) prove that a transfer at $8.46 per hour was permitted under the hospital's transfer policy and that a position was open at $8.46 per hour.

For the reasons discussed above, we reject Community's assertion and conclude that *White* is not dispositive. We determine, based on our holding today, that Fail has proved her prima facie case. Therefore, the burden shifted to Community to prove either undue hardship or that it offered reasonable

accommodation. As a result, we hold that the court of appeals correctly affirmed the trial court's order shifting the burden of proof to Community.

### B. Qualified Individual with a Disability

■ The second issue on review is whether the trial court was required to instruct the jury on the definition of "qualified individual with a disability." Community stipulated that Fail met the definition of a disabled person under the ADA, that she was terminated because of her disability, and that she was qualified for the vacant medical records position. Taken as a whole, these stipulations are sufficient to find that Fail is a qualified individual with a disability under the ADA. *See* 42 U.S.C. § 12111(8) (1994). However, Community claims that Fail lost this status because it offered Fail the medical records position, and she turned it down. Fail denies that the offer was made. Community asserts that if Fail did indeed turn down the job offer, she failed to prove an essential element of her prima facie case. Plainly, the existence of an offer and its terms are fact questions for the jury.

At the close of evidence, Community tendered proposed jury instruction K stating that a person who meets the definition of a qualified individual with a disability can subsequently lose that status if that individual rejects an accommodation.[4] The trial court rejected this instruction in favor of one submitted by Fail.[5] Fail's jury instruction 13 did not include a definition of a qualified individual with a disability, and it did not state that she could lose that status if she refused a job offer. Community argues that the trial court's failure to include this definition was reversible error because Fail was required to prove, as part of her prima facie case, that she was a qualified individual with a disability.

■ Community is correct in its assertion that a qualified individual with a disability who rejects reasonable accommodation cannot recover under the ADA. *See Kuehl v. Wal–Mart Stores, Inc.,* 909 F.Supp. 794, 803 (D.Colo.1995). However, based on our holding today that the employer is required to prove that it offered a reasonable accommodation, an employee is not required to prove the converse, i.e., that an offer was not made.

■ Moreover, we find that the trial court's rejection of proposed jury instruction K was not reversible error. A trial court is required to instruct the jury when requested to do so if the theory is supported by evidence admitted at trial and by the applicable law. *See Hansen v. State Farm Mut. Auto. Ins. Co.,* 957 P.2d 1380, 1384 (Colo.1998). Absent a showing of substantial, prejudicial error, a trial court's refusal to give a requested jury instruction does not warrant a rever-

---

**4.** Community's proposed jury instruction K stated in relevant part:

A qualified individual with a disability is not required to accept an accommodation ... which such person chooses not to accept. However, if such individual rejects such an accommodation ... that is necessary to enable the individual to perform the essential functions of the position held or desired, and as a result of that rejection, cannot perform the essential functions of the position, the individual will not be considered a "qualified individual with a disability" *and is not entitled to recover damages for any alleged discrimination.*

(emphasis added). This jury instruction is taken from 29 C.F.R. § 1630.9(d) with two differences. First, Community added the underlined portion. In addition, Community neglected to include the modifier "reasonable" which limits the type of accommodation that an employee cannot reject if he or she is to meet the definition of a "qualified individual with a disability." *See* 29 C.F.R. § 1630.9(d) (1998). Omission of "reasonable" is

erroneous. It is not error for a trial court to reject an erroneous instruction. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 892–93 (Colo.1986).

**5.** Fail's jury instruction 13 stated in relevant part:

The Americans with Disabilities Act does not prohibit an employer from taking an individual's disability into account when it makes an employment decision. However, when an employer relies on the individual's disability in making an employment decision, the employer has the burden of proving that the disability was properly considered.

In a case like this, where the Defendant admits that the Plaintiff's disability was, at least in part, a factor in its decision, the Defendant has the burden of proving, by a preponderance of the evidence that [D]efendant reasonably accommodated Plaintiff's disability in regard to reassignment to vacant positions for which she was qualified.

sal of a judgment. *See Armentrout v. FMC Corp.*, 842 P.2d 175, 187 (Colo.1992). It is not reversible error for a trial court to refuse an instruction if the instructions ultimately given to the jury encompass the contents of the rejected instruction. *See Underwood v. Dillon Cos., Inc.*, 936 P.2d 612, 615 (Colo. App.1997).

Community's theory of the case was supported by evidence, but its instruction K was an incomplete statement of the law. Instead of that instruction, the jury received instruction 1, which stated that Community "claims that it made an accommodation to the plaintiff by offering her a position for which she was qualified." Instructions 13 and 14 when read together state that Community had a duty to offer reasonable accommodation and that reasonable accommodation may include reassignment. The content of these instructions combined with instruction 1 set forth Community's duty to offer reasonable accommodation and Community's theory that it had offered reassignment. Instruction 13 also stated that if Community proved that it offered reassignment, the jury was required to find for the defendant. Taken as a whole, these instructions encompass the rule that an employee who refuses reasonable accommodation is no longer a qualified individual with a disability and cannot recover under the ADA. Therefore, we find no substantial prejudicial error in the trial court's refusal to include Community's proffered instruction.

Community also argues, based on *Armentrout*, that the term "qualified individual with a disability" is a technical term requiring an explanation. In *Armentrout*, a trial court's rejection of an instruction defining the word "defective" was reversible error because that term had a common meaning that differed from the highly technical definition required by the applicable legal test. *See Armentrout*, 842 P.2d at 186. As a consequence of not defining "defective," the jury could have applied the common meaning instead of the legal test. We find that the case before us is distinguishable from *Armentrout* because Community's stipulations taken as a whole acknowledge that Fail was a qualified individual with a disability. There-

fore, the trial court was not required to instruct the jury on the meaning of this term.

### C. Reassignment with a Reduction in Pay

The third question on review is whether a pay reduction is allowed under the ADA when an employer offers to accommodate an employee by reassignment to a new position. Community argues that the court of appeals imposed upon employers an affirmative duty to reassign disabled employees without a cut in pay. We do not agree that this is a fair interpretation of the court of appeals' decision, and we hold, as Fail concedes, that reassignment with reduced pay is allowed under certain circumstances.

Community argued to the court of appeals that it did not have an affirmative duty to reassign Fail because her pay rate of $8.46 per hour was above the sixth step. Asserting that it had a policy against paying transferees at rates above the sixth step and that it applied this policy to all employees regardless of disability, Community concluded that it did not discriminate against Fail by refusing to transfer her.

The court of appeals did not make the sweeping holding Community alleges. Rather, it held that an employer is required to offer reassignment to a lower-paying position if the disabled employee is not qualified for the vacant position at her current rate of pay and the employer typically reduces the salary of non-disabled employees who transfer to lower-paying positions. *See Fail*, 946 P.2d at 579 (relying on 29 C.F.R. app. § 1630.2(o) (1996)). Therefore, Community's argument fails because the court of appeals did not impose an affirmative duty on employers to reassign employees at the same pay level.

Furthermore, we affirm the court of appeals' holding that Community's duty of reasonable accommodation may have included the duty to offer Fail a transfer at reduced pay. *See Fail*, 946 P.2d at 579. As we stated earlier in this opinion, the ADA imposes a duty on employers to offer reasonable accommodation. *See* 42 U.S.C. § 12112(b)(5)(A) (1994). Reasonable accommodation may include reassignment to a vacant position. *See* 42 U.S.C. § 12111(9)(B) (1994). However, an employer is not re-

quired to promote a disabled employee, create a new position for that employee, or reassign that employee to an occupied position. *See White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir.1995). Therefore, if there are no comparable positions available for which the employee is qualified, an employer should offer reassignment to a lower-paying position if the employee is qualified and if the employer has followed a policy of reducing the salary of other employees when reassigned to that position.

█ Community argues that if the disabled employee cannot be accommodated in her current position, the employer is not required to transfer the employee to another position. As authority for this proposition, Community cites *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1308 (10th Cir.1998), *reh'g granted*, 158 F.3d 1060 (10th Cir.1998) and *Dyer v. Jefferson County School District R–1*, 905 F.Supp. 864, 869 (D.Colo.1995). We find that Community's assertion is inconsistent with an employer's duty to offer reasonable accommodation. *See generally Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1300–01 (D.C.Cir.1998) (rejecting *Smith* as unpersuasive based on legislative intent and the EEOC guidelines); *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir.1998) (requiring that employers consider reassignment); *Bowers v. Bethany Med. Ctr.*, 959 F.Supp. 1385, 1390–91 (D.Kan.1997) (imposing a duty on the employer to consider reassignment). Moreover, as noted by the Court of Appeals for the District of Columbia in *Aka*, the legislative history specifically contradicts Community's assertion that an employer who cannot accommodate an employee in her current position is not required to offer reassignment:

> Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and employer from losing a valuable worker.

H.R.Rep. No. 101–485(II), at 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 345. The legislative history also states that Congress intended to impose a greater burden on employees to offer reasonable accommodation under the ADA because of "the crucial role that reasonable accommodation plays in ensuring meaningful employment opportunities for people with disabilities." *See* H.R.Rep. No. 101–485(II), at 68 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 350.

█ In addition, we are persuaded by the Equal Employment Opportunity Commission (EEOC) guidelines listing reassignment to a vacant position as a reasonable accommodation. *See* 29 C.F.R. § 1630.2(*o*)(2)(ii) (1998). The EEOC is the agency charged with enforcement of the ADA. Its guidelines are not controlling, but they provide an informed judgment to which we can look for guidance. *See Aka*, 156 F.3d at 1300; *see also Hendricks–Robinson*, 154 F.3d at 693 (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 115, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)). Therefore, we hold that the ADA requires an employer to offer reassignment to a vacant position that the employee can perform if the employer cannot reasonably accommodate her disability in her current position. In light of our earlier holding that reassignment with reduced pay is allowed under certain circumstances, we hold that an employer has a duty to offer reassignment to a lower-paying position if the disabled employee is not qualified for the vacant positions at her current rate of pay, if she is qualified to perform the lower-paying position, and if the employer typically reduces the salary of non-disabled employees who transfer to such positions.

### D. Burden of Proof on Punitive Damages

█ The final issue before this court is the burden of proof on punitive damages. If an employer is found to have violated the ADA, 42 U.S.C. § 1981a of the Civil Rights Act of 1991 provides for punitive damages upon proof that the employer discriminated with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1) (1994).[6]

**6.** Section 12117 of the ADA adopts the powers, remedies, and procedures set out in §§ 2000e–4,

However, section 1981a is silent as to the burden of proof.

When a provision of the Civil Rights Act does not set out a rule of decision, 42 U.S.C. § 1988 directs the courts to enter into a three-step process to determine the applicable law. *See Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *see also* 42 U.S.C. § 1988 (1994). First, courts must look to federal law to determine whether a federal rule exists. If there is no federal rule, the second step requires courts to consider the application of state law. Since the federal interest predominates, the third step qualifies the application of state law by forbidding its application if it is inconsistent with the United States Constitution and the laws of the United States.

In *Boulder Valley School District R–2 v. Price,* 805 P.2d 1085 (Colo.1991), a case predating the adoption of § 1981a, we determined that there was no federal law setting out the burden of proof for punitive damages awarded under 42 U.S.C. § 1983.[7] Therefore, we adopted Colorado's standard requiring proof beyond a reasonable doubt. *See Boulder Valley,* 805 P.2d at 1090–92 (applying section 13–25–127(2), 6A C.R.S. (1987)). Relying on *Boulder Valley,* Community tendered proposed jury instruction C stating that the burden of proof on punitive damage awards under § 1981a is beyond a reasonable doubt. The trial court rejected this instruction in favor of jury instruction 22 that set the burden of proof at a preponderance of the evidence.[8] Community argues that although *Boulder Valley* was decided prior to the enactment of § 1981a, it is still good law because federal courts cannot create federal common law. According to Community, if this court determined that there was no applicable federal law when *Boulder Valley* was decided, it is bound to that decision today, even though some later federal decisions have adopted the preponderance standard for punitive damages under § 1981a.

The court of appeals distinguished *Boulder Valley,* finding that since the adoption of § 1981a, enough federal authority has been created to support a preponderance standard for punitive damages under § 1981a. *See Fail v. Community Hosp.,* 946 P.2d 573, 581 (Colo.App.1997). The question before this court is whether the court of appeals is correct in its assertion that there is a federal standard to adopt.

Since the adoption of § 1981a, only one federal jurisdiction has directly addressed the burden of proof for punitive damages under § 1981a holding that the correct standard is a preponderance of the evidence. *See Stender v. Lucky Stores Inc.,* 803 F.Supp. 259, 324 (N.D.Cal.1992); *Adams v. Pinole Point Steel Co.,* Nos. C 92–1962 MHP, C 93–3708 MHP, 1995 WL 73088, at *5 (N.D.Cal. Feb.10, 1995). In *Stender,* the court based its holding on *Price Waterhouse v. Hopkins,* 490 U.S. 228, 253, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Although *Price Waterhouse* was decided before § 1981a was added to the Civil Rights Act, the court in *Stender* quoted *Price Waterhouse* for the proposition that "[c]onventional rules of civil litigation generally apply in Title VII cases ... and one of these rules is that parties to civil litigation need only prove their case by a preponderance of the evidence." *See Stender,* 803 F.Supp. at 324 (citing *Price Water-*

2000e–5, 2000e–6, 2000e–8, and 2000e–9 of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117 (1994). Section 1981a provides for punitive damages in actions brought under 42 U.S.C. § 2000e–5 (1994). *See* 42 U.S.C. § 1981a (1994). Specifically § 1981a(b)(1) states:

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

*Id.*

7. Section 1983 is derived from section 1 of the Civil Rights Act of 1871; this provision does not discuss damages. However, the United States Supreme Court had made it clear, prior to the adoption of § 1981a, that punitive damages were available for § 1983 violations. *See Smith v. Wade,* 461 U.S. 30, 36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

8. The jury instruction stated, "You may award the plaintiff punitive damages if you find, by a preponderance of the evidence, that the acts or omissions of the defendant were done maliciously or with reckless indifference to the federally protected rights of the plaintiff."

*house,* 490 U.S. at 253, 109 S.Ct. 1775) (alteration in original). Section 107 of the ADA adopts the enforcement provisions of Title VII. *See* 42 U.S.C. § 12117(a) (1994).

In *Price Waterhouse,* the defendant accounting firm allowed discriminatory remarks about a female employee to influence its decision to deny her a promotion. *See Price Waterhouse,* 490 U.S. at 236–37, 109 S.Ct. 1775. However, Price Waterhouse claimed that it would have made the same decision in the absence of the discriminatory remarks. Applying "conventional rules of civil litigation," the United States Supreme Court reduced Price Waterhouse's burden of proof that it would have made the same decision from a clear-and-convincing standard to a preponderance-of-the-evidence standard. *See id.* at 252–53, 109 S.Ct. 1775. Subsequently, with the adoption of the Civil Rights Act of 1991, Congress amended our nation's civil rights law so that the Court's holding that an employer could escape liability even if it admitted to illegal discrimination is no longer viable. *See* H.R.Rep. No. 102–40(I), at 45–50 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 583–84. Moreover, Congress specifically preserved the preponderance-of-the-evidence standard. *See* H.R.Rep. No. 102–40(I), at 45 n. 39 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 583.

Our research has found that no other federal courts have directly addressed the burden of proof for the punitive damages provision of § 1981a. Instead, the federal courts that have reviewed § 1981a have focused on what level of intent must be shown for punitive damages to be awarded. *See Kolstad v. American Dental Ass'n,* 139 F.3d 958, 965 (D.C.Cir.1998) (requiring a threshold showing of egregiousness); *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 507 (1st Cir. 1996) (stating that punitive damages require a higher standard than compensatory damages and requiring a showing of malice or reckless indifference to federal rights); *Luciano v. Olsten Corp.,* 110 F.3d 210, 220 (2d Cir.1997) (rejecting an "extraordinarily egregious" showing in favor of a showing of reckless indifference or malice); *Tincher v. Wal–Mart,* 118 F.3d 1125, 1132 (7th Cir.1997) (requiring a showing of malice or reckless

indifference to federally protected rights); *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1065–66 (8th Cir.1997) (requiring a showing of reckless indifference or malice, not something more); *Ngo v. Reno Hilton Resort Corp.,* 140 F.3d 1299, 1304 (9th Cir.1998) (requiring a showing that the defendant "almost certainly knew that what he was doing was wrongful and subject to punishment"); *Taylor v. ScottPolar Corp.,* 995 F.Supp. 1072, 1080–81 (D.Ariz.1998) (requiring more than a mere showing of intentional discrimination). These cases do not provide guidance because they only set out what level of intent must be established before sending the punitive damages determination to the jury. They do not address the quantum of proof required to establish that substantive level of intent.

Despite the limited number of federal cases directly addressing the requisite burden of proof for punitive damages awards under § 1981a, we agree with the court of appeals that there is adequate federal authority setting the burden of proof for punitive damages under § 1981a at a preponderance of the evidence. In reaching this conclusion, we hold that *Boulder Valley* incorrectly determined that federal law was deficient regarding the burden of proof in punitive damages awards in civil rights actions. As a result, we hold that *Boulder Valley* improperly applied state law to § 1983 awards and we now overrule that case. The proper burden of proof for punitive damages under both §§ 1983 and 1981a is a preponderance of the evidence.

When this court decided *Boulder Valley,* there was no provision within § 1983 of the Civil Rights Act specifically allowing for punitive damages. *See Fail,* 946 P.2d at 581. Nevertheless, it was generally understood that punitive damages were available, and the courts turned to the common law of torts for guidance in setting out the standard for awarding punitive damages. *See Smith v. Wade,* 461 U.S. 30, 34, 36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). In *Smith,* the United States Supreme Court relied on tort law to require proof of evil motive or intent, or reckless or callous indifference to the federally protected rights of others before punitive

damages could be awarded under § 1983. *See id.* at 51, 56, 103 S.Ct. 1625.

Although *Smith* did not address the burden of proof on punitive damage awards, other federal courts had adopted the preponderance-of-the-evidence standard for § 1983 claims. *See Bird v. Figel,* 725 F.Supp. 406, 412 (N.D.Ind.1989); *Patrykus v. Gomilla,* Nos. 86 C 9748, 87 C 2083, & 87 C 7925, 1989 WL 8610, at *3 (N.D.Ill. Feb.2, 1989) (citing *Spanish Action Comm. of Chicago v. City of Chicago,* 766 F.2d 315, 318 n. 2 (7th Cir. 1985)); *Norris v. City of Easton,* CIV. A. No. 88–3028, 1989 WL 49520, at *3 (E.D.Pa. May 8, 1989). In addition, several federal courts had approved jury instructions setting out the preponderance standard of proof for punitive damages in civil rights actions. *See Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 205 n. 5 (1st Cir.1987); *Wren v. Spurlock,* 798 F.2d 1313, 1322 (10th Cir.1986); *McKinley v. Trattles,* 732 F.2d 1320, 1326 n. 2 (7th Cir.1984); *Cerjan v. Fasula,* 539 F.Supp. 1226, 1235 (N.D.Ohio 1981); *see also Nelson v. Emerald People's Util. Dist.,* 318 Or. 99, 862 P.2d 1293, 1300 (Or.1993) (determining, based on cases decided prior to *Boulder Valley,* that the federal standard of proof for punitive damages under § 1983 is a preponderance of the evidence).

Moreover, two years prior to *Boulder Valley,* the United States Supreme Court adopted a preponderance standard for Title VII cases stating that exceptions "are ordinarily recognized only when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual." *See Price Waterhouse,* 490 U.S. at 253, 109 S.Ct. 1775. In light of these cases, we find that *Boulder Valley* incorrectly determined, when setting out the burden of proof under § 1983, that federal law was insufficient.

Community cites *Mitchell v. Keith,* 752 F.2d 385 (9th Cir.1985), for the proposition that "'other jurisdictions' have held that § 1988 mandates use of state law for punitive damages." However, *Mitchell* has been criticized for applying state law after summarily stating that federal law was deficient regarding punitive damages. *See Jones v. Reno*

*Hilton Resort Corp.,* 889 F.Supp. 408, 411 n. 1 (D.Nev.1995). In particular, the court in *Jones* concluded that the *Mitchell* court unnecessarily applied California's general law of punitive damages when a suitable standard could have been borrowed from closely analogous federal § 1983 jurisprudence like *Smith v. Wade. See id.* We agree that *Mitchell* does not support a finding that federal law is inadequate on the issue of punitive damages.

Therefore, we hold that the burden of proof on punitive damages is a preponderance of the evidence. Accordingly, we affirm the court of appeals' holding that jury instruction 22 correctly set out the burden of proof. In addition, we hold that part III of *Boulder Valley School District R–2 v. Price,* 805 P.2d 1085 (Colo.1991), is overruled.

### III.

For the reasons discussed above, we affirm the judgment of the court of appeals.